# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**Edvin Yug DENG**<br>*Defendant* | Case No. 22-mj-160 |

## CRIMINAL COMPLAINT

I, **Timothy C. Carroll,** the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

Beginning on or about September 21, 2022, in the Western District of New York, the defendant, **Edvin Yug DENG**, did knowingly, intentionally, and unlawfully import into the United States from a place outside thereof, that is, Canada, MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3).

### COUNT TWO

On or about September 21, 2022, in the Western District of New York, the defendant, **Edvin Yug DENG**, did knowingly, intentionally, and unlawfully possess with intent to distribute MDMA, Schedule I controlled substance, in violation of the Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

TIMOTHY C. CARROLL
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

*Printed name and title*

Sworn to before me and signed telephonically.

Date: September 21, 2022

*Judge's signature*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF NEW YORK)
COUNTY OF ERIE   )   SS:
CITY OF BUFFALO  )

I, **Timothy Carroll,** Special Agent with Homeland Security Investigations (HSI) Department of Homeland Security, having been duly sworn, states as follows:

## INTRODUCTION

1. I am employed as a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York and have been so employed in that capacity since September 2019. Prior to employment with Homeland Security Investigations, I was employed by U.S. Customs and Border Protection (CBP) in Buffalo, New York and assigned to the Homeland Security Investigations- Border Enforcement Security Taskforce (BEST) as a Task Force Officer (TFO). Prior to employment with Customs and Border Protection, I was employed by the United States Border Patrol as a Border Patrol Agent. Duties as a Border Patrol Agent consisted of line watch operations in the Calexico, California area of responsibility in order to stop the entry of illegal persons and substances attempting to enter the United States. I am currently assigned to the HSI Buffalo Border Enforcement Security Task Force ("BEST"), an HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York and tasked with combatting transnational criminal organizations ("TCOs") exploiting vulnerabilities of the shared international border. As such I am a law enforcement officer of the United States,

within the meaning of Section 115(c)(1) of Title 18, United States Code, who is "authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of Federal criminal law." Furthermore, per the Interagency Cooperation Agreement between the Drug Enforcement Administration ("DEA") and ICE/HSI, I am a cross-designated agent authorized to investigate violations of Title 21, United States Code.

2. As a Special Agent, I attended the Federal Law Enforcement Training Center ("FLETC") completing the Criminal Investigator Training Program ("CITP") and HSI Special Agent Training ("HSI SAT"). During this training, I received detailed training, both academic and practical application, in the areas of informant handling/ debriefing, drug packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in Federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants.

3. I have led, conducted, and assisted with complex criminal, multi-jurisdictional investigations targeting the importation, exportation, smuggling, transporting, trafficking, and distribution of controlled substances conducted by TCOs, DTOs, and regional drug trafficking cells. I have conducted and assisted with physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers and money launderers. Through my training, education, and experience (including debriefing cooperating drug traffickers and money launderers, monitoring wiretapped

conversations of drug traffickers and money launderers, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking and money laundering), I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, the various ways drug money is laundered, and the efforts of persons involved in such activities to avoid detection by law enforcement. I have also conducted and participated in numerous debriefings of narcotic traffickers, confidential informants, cooperating defendants, cooperating individuals, and sources of information regarding methods, "coded" talk, and counter-surveillance techniques employed within a drug cell, organization, or TCO to avoid law enforcement detection. My investigative experience detailed herein, as well as the experience of other law enforcement agents who are participating in this investigation, and information provided to me by cooperating sources, serve as the basis for the opinions and conclusions set forth herein.

4. This affidavit is made in support of a criminal complaint charging **Edvin Yug DENG** with violating Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3), (importation of controlled substances), and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute controlled substances). The information in this affidavit is based on my personal knowledge and upon reports and information received from other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every fact I have learned during this investigation.

## PROBABLE CAUSE

5. On September 21, 2022, at approximately 0130 hours, United States Border Patrol Buffalo Sector Communications advised of a drone launch in the area of Youngstown,

3

New York. The aforementioned drone was monitored via electronic surveillance as originating at a residence in Youngstown, New York and transiting across the Lower Niagara River into Ontario, Canada. The drone made landing in Niagara Falls, Ontario near the On Seven Estates Winery at 0138 hours.

6. At 0152 hours, the drone was observed by USBP Sector Communications as launching from Niagara Falls, Ontario near the On Seven Estates Winery. The drone was tracked from the launching point in Niagara Falls, Ontario and was observed entering U.S. Airspace at 0203 hours. At 0204 hours the drone returned to its originating launch location at a residence in Youngstown, New York. Law enforcement was able to know the location where the drone was originating and returning to by utilizing an electronic surveillance system that has the capabilities to recognize drone signatures, map their flight path and identify starting and stopping points via GPS.

7. At 0205 hours, law enforcement personnel from the United States Border Patrol (USBP) and New York State Park Police (NYSPP) observed the drone hovering in the back yard of 4240 Wolf Run Drive, Youngstown, New York. Law enforcement was able to determine that the drone, which was operating without navigation lights, had an attached package hanging from the chassis. The drone dropped altitude and made landfall near an individual later identified as **Edvin Yug DENG** who was identified as the drone pilot and an additional subject, later identified as J.C.

8. Upon observing the drone land in the backyard of 4240 Wolf Run Drive, Youngstown, New York, United States Border Patrol and New York State Park Police made

4

entry to the back yard via a north side gate. Responding agents and officers announced themselves as police and ordered the subjects not to move. Both the drone pilot (**Edvin Yug DENG**) and the additional subject (J.C) ran into the residence via an open door which lead into an open kitchen/living room area. Subsequently, the drone pilot, **Edvin Yug DENG**, surrendered and was placed under arrest.

9. The package from the drone was unattached and transported to the Niagara Falls Border Patrol Station for analysis and seizure. Once at the Niagara Falls Station, a United States Border Patrol K9 was requested to assist with providing a "canine sniff" of the package that was removed off the drone. USBP K9 Agent Gibbons performed a sniff with Canine Shanti of the USBP garage where the package was to be searched to ensure there were no trained odors present. The package was then introduced into the search area and hidden behind a box. Border Patrol Agent Gibbons then performed another canine sniff of the area. Canine Shanti alerted and indicated to the presence of narcotics within the package that had been seized from the drone at 4240 Wolf Run Drive, Youngstown, New York. The drone package was then disassembled revealing three vacuum sealed bags that contained a purple crystalline substance. The crystalline substance was field tested using the Gemini narcotics analyzer. The Gemini device returned a positive result for narcotics, identifying the substance as MDMA hydrochloride, which is a schedule I controlled substance. The total weight of the three vacuum sealed bags that contained the purple crystalline substances was determined to be 3123 grams.

10. Based on my training and experience, this amount of MDMA is consistent with that of a narcotics trafficker and not of a casual user for their consumption. Those who use

MDMA in party and casual settings do not typically buy MDMA in the kilogram amount. Additionally, simple users in drugs and narcotics are not known to import the drugs themselves using highly sophisticated smuggling methods such as a drone. This behavior is consistent with individuals that are importing and re-selling a drug/narcotic for sale.

**WHEREFORE**, based on the foregoing information, the affiant believes that probable cause exists that **Edvin Yug DENG** has violated Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3) (importation of controlled substances), and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (possession with intent to distribute controlled substances).

TIMOTHY C CARROLL
Digitally signed by TIMOTHY C CARROLL
Date: 2022.09.21 17:09:55 -04'00'

TIMOTHY C. CARROLL
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me telephonically

this 21st day of September, 2022.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge